■ ANNIE VILLAUREL, Respondent, v CITY OF NEW YORK et al., Defendants, and NEW YORK CITY TRANSIT AUTHORITY, Appellant. [873 NYS2d 740]—

In an action to recover damages for personal injuries, the defendant New York City Transit Authority appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Queens County (Roman, J.), entered August 23, 2007, as, upon a jury verdict on the issues of liability and damages and upon the denial of its motion pursuant to CPLR 4401 for judgment as a matter of law made at the close of the plaintiff's case on the issue of liability, is in favor of the plaintiff and against it in the principal sum of $647,333.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

On February 14, 1999 at 9:45 A.M., upon exiting the Q4 bus at a bus stop at the intersection of Parsons Boulevard and Archer Avenue in Jamaica, the plaintiff slipped and fell on a patch of ice near the Parsons/Archer subway station. The plaintiff commenced the instant action alleging negligence against the City of New York, the New York City Fire Department (hereinafter the FDNY), and the New York City Transit Authority (hereinafter NYCTA).

At trial, the deposition testimony of a deceased nonparty witness was read into the record before the jury. The witness testified that he arrived at the Parsons/Archer intersection to wait for a bus approximately 15 to 30 minutes before the plaintiff's accident occurred, and that he observed the accident. He noted that an ice patch had already formed when he arrived, and that the source of the ice was a leaking standpipe near the subway wall. The witness himself had slipped in the same area within the period of time he had been waiting for the bus, and had observed three or four other people slip there as well prior to the plaintiff's arrival. The witness stated that at the time of the accident the ice patch was anywhere from 5 to 10 feet wide and extended from the subway wall to the curb.

The station supervisor for the Parsons/Archer subway stop, an employee of NYCTA, testified at trial. His duties included reporting problems such as a broken or leaking standpipe to

NYCTA's maintenance department, and his daily shift ended at 11:00 P.M. The supervisor stated that the last time he inspected the standpipe prior to the accident was between 3:20 and 3:55 P.M. on the preceding day. He averred that he did not observe the standpipe leaking at that time.

The plaintiff's son viewed the accident scene approximately one hour after the accident occurred, and testified at trial that he took photographs of it at approximately noon that same day. The photographs depict an ice patch extending from the subway wall to the curb. The plaintiff testified at trial that the photographs accurately depicted the accident scene at the time of the accident. Additionally, her son noted that, when he took the pictures, he observed that the standpipe was dripping every five seconds.

The plaintiff's meteorological expert provided certified climatological records, and testified, based on those records, that there was no natural precipitation on the ground such as rain or snow at the time of the plaintiff's accident. Based upon the testimony concerning the frequency with which the water dripped from the standpipe, the photographs of the accident scene, and the certified climatological records, as well as other factors, the expert opined that the icy condition would have taken at least one hour to form.

After the plaintiff's claims against the City and the FDNY were dismissed, a jury found that NYCTA was negligent and 100% at fault in the happening of the accident. There was legally sufficient evidence to support the jury's verdict in favor of the plaintiff. "For a court to conclude that a jury verdict is not supported by legally sufficient evidence, there must be no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusions reached by the jury on the basis of the evidence presented at trial" (*Anthony v New York City Tr. Auth.*, 38 AD3d 484, 485 [2007]). Here, in light of the evidence presented, the jury could have reasonably determined, based on a valid line of reasoning and permissible inferences, that a visible and apparent defect "exist[ed] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (*Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]).

Specifically, according to the deceased eyewitness's deposition testimony, the ice was present when he arrived at the scene approximately 15 to 30 minutes before the plaintiff's accident, it extended from the subway to the curb, and it was 5 to 10 feet wide. The photographs, which were taken reasonably close to the time of the accident and were properly authenticated by the

plaintiff (*see Ferlito v Great S. Bay Assoc.*, 140 AD2d 408, 408-409 [1988]), reveal an ice patch of significant size extending from the subway wall into the street. There was no evidence that any of NYCTA's employees inspected the standpipe less then 18 hours before the accident. Based on all of this information, the jury could have reasonably inferred that the ice existed for a substantial period of time prior to the accident (*cf. Blake v City of Albany*, 48 NY2d 875, 877-878 [1979]; *Catanzaro v King Kullen Grocery Co.*, 194 AD2d 584, 584-585 [1993]).

Moreover, the hazardous condition in this case was the result of an unnatural phenomenon, as opposed to the natural snow or sleet that defendants are frequently allowed substantial periods to address (*see e.g. Urena v New York City Tr. Auth.*, 248 AD2d 377, 377-378 [1998]). Under the circumstances, the jury reasonably could have found that the existence of the condition for even 30 minutes prior to the accident was sufficient constructive notice (*see Negri v Stop & Shop*, 65 NY2d 625, 626 [1985]; *Backer v Central Parking Sys.*, 292 AD2d 408, 409 [2002]; *Huth v Allied Maintenance Corp.*, 143 AD2d 634, 636 [1988]). Thus, contrary to the NYCTA's contention, the jury verdict was based on legally sufficient evidence.

The NYCTA's remaining contentions are without merit. Fisher, J.P., Dillon, Belen and Chambers, JJ., concur.